CASE 54—ACTION OF COVENANT—APRIL 26.

# Turner, Etc. v. Johnson.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. APPEALS—BILL OF EXCEPTIONS.—Upon the former appeal in this case the bill of exceptions was stricken from the record because it has not been filed in time. Upon the second trial of the case this bill of exceptions was by consent read as evidence. Upon this appeal the certificate of the clerk shows that this record together with what was copied on the former appeal constitutes a complete transcript of all the proceedings in the case. It is thereupon held that the motion to strike the bill of exceptions from the transcript should be overruled.

2. CONFLICT OF LAWS—LAW OF FORUM CONSTRUING BOND.—In the absence of allegation and proof that under the laws of Missouri where the bond was executed, a different effect is to be given to it from that under the laws of Kentucky, the presumption will be indulged that the law of the place of the contract is the same as the law of the forum.

3. BOND—CONSTRUCTION OF.—By the bond in suit, the appellee bound

Turner, &c., v. Johnson.

himself to pay the appellants a reasonable and fair rent of the property during the time the appellants were kept out of its possession and any damages they sustained from waste or injury to the property during the time. Under this covenant the appellants were entitled to recover, first, the reasonable rental, and, second, the waste committed while appellee remained in possession.

4. EVIDENCE—PREPONDERANCE OF.—The court in this case examines the evidence and finds that the chancellor's finding of facts is not palpably against the weight of the evidence, either as to, first, the rents, and, second, the waste. The fact that the renting by the appellee was at public out-cry to the highest and best bidder, is not conclusive that the rent thus obtained was a fair and reasonable rent.

5. TAXES.—The appellee was entitled to credit for the taxes paid by him upon the land during the time he was in possession.

6. Appellee was not entitled to credit for the amount of the Martin debt because the evidence shows that the debt was paid before it was assigned to him, and was not a live claim in his hands.

7. Allowances of items not covered by the bond. The court did not err in refusing to allow the appellee credit for $111, compound interest upon the Green debt, which constituted a lien upon the land in controversy. This interest did not constitute an element of damage covered by the bond.

8. BASIS OF COMPUTATION OF MUTUAL CLAIMS.—It was error on the part of the court to allow the claimants as against each other interest on their respective claims from the date they accrued, especially as some of the claims bore interest at eight per cent. and others at six. The cost of the Superior Court should be credited as of the date it was due, and subject to these credits, interest should be counted in favor of appellants as in partial payments down to January 8, 1892, and after deducting from the sum then due, the amount then paid, $4,403.59, the appellants should have interest on the balance due them from that date until it is paid. The amount of $506 to Thomas E. Turney for his fee should be credited as of date January 1, 1887, on the amount then due.

T. TURNER, FOR THE APPELLANT.

Counsel argued chiefly upon the facts as they developed from the evidence in the record.

Upon the questions of law, the citations were as follows:   Rankins

Turner, &c., v. Johnson.

v. R. R. Co., 2 Mo., 167; Buford v. Pickett, 3 Mo. App., 105; Seattle v. Gilchrist, 4 Wash. St. Rep., 509; Am. Digest for 1893, 1939; Inez v. Quinn, 22 N. Y. St., 251; 159 Pa. St., 99; N. Y. Syndicate v. Frazier, 130 U. S., 611; Van Rensaleer v. Moule, 16 N. Y. St., 465; Lou R. R. Co., v. Cox, 50 Ill. App., 380; Douglass v. Bates, 26 Ill. App., 369; Russell v. Hayden, 41 N. W. R., 456; Richardson    v.    Buckler,    8    Ky.    Law    Rep.,    617;    Holt v. Crum, Litt. Sel. Cas., 499; Coleman v. Allen, 3 J. J. Mar., 229; Gregory v. Ford, 5 B. Mon., 480; Marshall v. Marshall, 12 B. M., 461; Jones v. Letcher, 13 B. Mon., 371; Tucker v. Hood, 2 Bush, 85; Hart v. Smith, 2 A. K. Mar., 301; Starkie on Ev., pp. 36, 51, 85; Taylor on Ev., Sec. 317; Wharton on Ev., Secs. 29, 75, 175, 447-8; Greenl. on Ev., Secs. 52, 59 and notes; Best on Ev., ch. 5, book 3, part 2, p. 487; Sec. 512, same 519; Powell on Ev., (4th ed.) 91, 140; Amer. Ed., of Best Principles of Ev., 100, 487 to 570, and notes; Bentham on Ev., 3 vol. 419; •Alphons v. U. S., 2 Story, 421; Wood v. Peck, 5 vol. (new series) Am. Law Reg., May, 1883; Wolf v. Hunter, Sup. Ct. of Ky., April 11, 1894; Hoskins v. R. R., 1 Mo. App., 454; San Diego v. Neal, 3 L. R. A., 83 and notes; Maysville v. Schultz, 3 Dana, 10; Robb v. Mt. Sterling, &c. Tp. Co., 3 Met., 117; Henderson, &c., R. R. v. Dickerson, 17 B. M., 175; Constant v. Lehman, 52 Kan., 229; Montgomery v. Sayre Cent. Law Jour. 1, 122, p. 100; 106 U. S. Rep., 611; 7 U. S. Dig., 325-130; 4 Am. & Eng. Ency. of Law, 566; and authorities cited; 2 Sedgwick on Damages (7th ed.), 606; 10 Bush, 185; Searcy v. Reardin, 3 Bibb., 529; Lucas v. Mitchell, 3 Mon., 247; Dawson v. Lee, 83 Ky., 49; Garrett v. Finnell, 2 Duv., 166; Frances v. Frances, 18 B. M., 46; Gardner v. Sously, 3 Litt., 426; Caldwell v. White, 3 Dana, 31; Oden v. Elliott, 10 B. M., 315; Bruce v. Stout, Hardin, 225; Voorhees v. Bennen, 2 Bibb., 572; Bowen v. Sebree and wife, 2 Bush, 112; Warfield v. Gardner, 79 Ky., 583; Murphy v. Estis, 6 Bush, 330; Ellen v. Murphy, 9 Bush, 587; Wickliff v. Hill, 4 Bibb., 269; Fible v. Caplinger, 13 B. M., 464; Riddle v. Louis, 7 Bush, 197; Guthrie v. Wickliffe, 1 Mar., 584; Taylor v. Knox, 5 Dana, 470; Bell v. Kench, 80 Ky., 42; R. R. v. Ramsey, 3 Ky. Rep., 385; Kenton v. Ins. Co., 12 Ky. Law Rep., 291; 7 Am. & Eng. Ency. of L., 492; Cavendish v. Troy, 41 Vt., 99; Clifford v. Richardson, 18 Vt., 626; State v. Folwell, 14 Kan., 105; Taylor v. Monroe, 43 Conn., 36; Clark v. Baird, 9 N. Y., 183; R. R. v. Schultz, 43 Ohio, 270; Haskell v. Mitchell, 89 Am. Dec., 711; R. R. v. White, 166 Ill., 375; Chambers v. Britton, 28 N. W. R., 561; Chicago R. R. v. Smith, 33 N. E. R., 241; 100 Cal., 182; Topeka v. Martineau, 42 Kan., 387.

Turner, &c., v. Johnson.

STONE & SUDDUTH AND JOHN C. MILLER, FOR THE APPELLEE.

1. The old bill of exceptions having been stricken from the records of this court, and not having been refiled, and not being part of the record of the lower court, nor taken down by an official stenographer, nor certified by the judge of the lower court, should be stricken from the files and disregarded. Civil Code, sec. 737; Ky. Stats., sec. 4644; Proctor Coal Co. v. Finley, 17 Ky. Law Rep., 310; Hortsman v. Lex. & Cov. R. R. Co., 18 B. M., 218.

2. The testimony shows that the rents actually received and accounted for by Col. Johnson are equal to the rental value of the land, and that said land did not depreciate in value by reason of bad cultivation upon Col. Johnson's part, nor did he destroy or injure any of the improvements thereon. This is settled by two jury verdicts and by one judgment of a chancellor.

3. The findings of the chancellor upon questions of fact will not be set aside unless clearly wrong. Gifford v. Mullins, 9 Ky. Law Rep., 714; Davezac v. Seiler, 93 Ky., 418; Francis v. Ramsey, 16 Ky. Law Rep., 870; Davidson v. Morrison, 86 Ky., 397.

4. The allowances as credits to appellee of taxes and attorney's fees paid in this case, being necessary to protect the land, were proper.

5. The demand of appellant being unliquidated, it was proper to charge interest on the off-sets of appellee up to the date of the liquidation of appellant's demands by judgment.

6. Both parties to the supersedeas bond living in Kentucky, the appeal bond was payable there, and should be construed by the laws of this State.

7. The law as laid down in the case of Turner v. Johnson, 95 Mo., 441, is the law of this case, and appellee should only be charged with the actual rents received. Morris v. Budlong, 78 N. Y., 543; Moore v. Cable, 1 Johnson's Chancery, 384; Jones on Mortgages, vol. 2, sec. 1123.

8. In estimating the value of these lands, their actual condition and not what they would be worth under hypothetical circumstances, is the true criterion. Rogers on Expert Testimony, 376, 349; Sedgwick on Damages, vol. 1; sec. 244; Pittsburg, &c., Ry. Co. v. Vance, 115 Pa. St., 332.

9. Testimony as to what adjacent lands rented for is incompetent. The case of Ewing v. Beauchamp, 4 Bibb., 496, explained. Testimony as to public rentings is competent to establish reasonable rental value. Sedgwick on Damages, sec. 243; Kent v. Whitney, 9 Allen (Mass.) 62; Brigham v. Evans, 113 Mass., 540; Smith v. Mitchell, 12 Mich., 180.

A. A. HAZELRIGG FOR THE APPELLANTS IN A PETITION FOR A REHEAR-
ING.

STONE & SUDDUTH AND JOHN C. MILLER FOR THE APPELLEE IN A
PETITION FOR A REHEARING.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

This is a second appeal of this case. The opinion on the former appeal will be found in 18 Ky. Law Rep., 202; [31 S. W., 1028], and as the facts of the case are fully stated there, they need not be repeated here. On the return of the case it was transferred to equity, and, the court having allowed appellants less than they were willing to accept, they have again brought the case to this court, appellee taking a cross appeal.

At the threshold we are met with a motion to disregard substantially all the proof in the case, on the ground that it is not properly before the court. This objection arises in this way: When the case was last here, this court struck out the bill of exceptions because it had not been filed in time, and this part of the transcript was then withdrawn from this court by appellants, and on the trial below, by consent of parties, and for convenience, this bill of exceptions was read; and the clerk, in making out the transcript, has only copied the record made since the last appeal, but he certifies that this record, with what was copied on the former appeal, constitutes a complete transcript of all the proceedings in the case. The judgment appealed from shows what was read on the trial, and the old record being now filed with the new, and both duly certified by the clerk, we see no substantial objection to the record as it is presented; and the conclusion heretofore reached, overruling the motion to strike out the bill of exceptions, is now adhered to.

The court below properly held that the effect of the bond

sued on must be determined by the law of Kentucky. There is no allegation that the laws of Missouri gave the bond a different effect from the laws of Kentucky. The law of another State must be pleaded, and, unless it is alleged to be different from our law, the legal effect of an obligation must be determined by the laws of Kentucky.

Tested by our law, the bond sued on obligates the appellee to pay appellants the reasonable and fair rent of the property during the time he was kept out of the possession of it by reason of the bond, and any damages he sustained from waste or injury to his property during this time. The evidence of the public renting of the property and the amount appellee received for the rent is competent to be considered in determining what was a fair rent, but it is not conclusive. In determining this question, we have had great difficulty. The proof shows: There were 2,735 acres in the tract. That it was a very valuable piece of land—worth $20 or $25 per acre. Six hundred and forty acres of it were in timber, 374 acres were old plow lands, and the rest of it was in grass lands or new plow lands. In 1885, 266 acres were new plow lands, and 1,455 acres were in grass. In 1886, 1887, and 1888, 586 acres were new plow lands, and 1,135 acres in grass.

There is some conflict in the proof on these points, but we think the weight of the evidence establishes the figures given. The contrary proof is mere estimate, and does not appear to be based on positive knowledge. As to the reasonable rent of the different character of lands for the four years in contest, the proof is also very conflicting, and wholly irreconcilable. Seventeen witnesses for appellants put the fair rent of the new plow lands at $3 an acre for each year; three of their witnesses put it at $3.50 or $4, and two at $2.50—none putting it at less than this. On

[ 30 ]

the other hand, a number of the witnesses for appellee put it at about $2 a year—some a little lower, and others a little higher. Several of them put it at $2.25, and appellee himself, when on the witness stand, stated that most of it was worth $2.25 an acre.

As to the grass land the proof was equally irreconcilable. Thirteen witnesses for appellant place its fair rent at $2 an acre and over, and five at $1.50. Two witnesses for appellee put it at $1.50, two at $1.25, one at $1, and several at less than this. Appellee not being allowed to testify on the subject, as he had not seen the grass, it was avowed that he would state it was not worth exceeding $1.25 an acre.

The same conflict of evidence occurs as to the old plow land; the proof for appellants putting it at considerably over $1 an acre, and the proof for appellee at $1 or less. Appellee averred that he would state that it was not worth exceeding 75 cents to $1 an acre.

The land is shown to have been good bluegrass land, equal to the bluegrass land of this State, and producing from forty to fifty bushels of corn to the acre when in good condition and properly worked. But there were only three houses on the entire tract of 2,700 acres, and it was difficult to rent out the land in large bodies at such prices as might have been obtained if there had been more houses, and it could have been subdivided into smaller tracts. We concur in the conclusion of the judge below that appellants should not be limited to the amount appellee received for the land. He rented it at public outcry, and in large bodies, at less than the clear preponderance of the evidence shows was a fair rent. By the judgment of the

court it had been determined that appellant Turner was entitled to redeem the land, and to have possession, upon payment to the appellee of the amount due him, which was about $18,000, of which $13,236 was bearing interest at 8 2-3 per cent. and $3,181 at 10 per cent. Turner was kept out of possession for four years by reason of the bond sued on, and at the end of that time had to pay appellee the amount due him, with interest at these rates for the time, besides the cost of action. Under such circumstances, we think appellee should be held responsible to Turner for such rent as he might have realized from the place by diligence, and for any damages done to the property by appellee's improper management of it.

The proof for appellants shows that the timbered land was set more or less in grass, and they claim that it was worth for pasturage at least $1 an acre. On the other hand, the proof for appellee shows that the grass was only in patches, that the bushes on much of the land were very thick, and that, in the condition and situation of the land, it could not reasonably be rented so as to bring in anything.

The discrepancy in the testimony of the witnesses as to the fair value of the rent may perhaps be accounted for, in a large measure, from the fact that some had in mind its intrinsic value, and others what it would have been practicable to realize from it, considering the situation of the land, the amount to be rented, and the difficulty of renting it in small bodies without more tenant houses. Under all the circumstances, we have concluded that little ought to be allowed for the rent of the timbered grass land, on account of the difficulty of making it available. The proof shows that in the subrenting a great deal of the new

Turner, &c., v. Johnson.

plow lands was put at $2 an acre, and that there was diffi-
culty in renting for its full value such a large body of land
as this—especially the grass land—with no more fences or
houses than this had on it. Considering all the
facts, we have reached the conclusion that, taking
it one year with another, $2 an acre for the new
plow land, and $1 an acre for the old plow land and the
open grass land, considered as a whole, will be a fair rent.
Figuring out the rent on this basis, we have made it about
the same as the circuit judge, and 'so adopt his figures for
the rent of the land.   We also concur in his conclusion
that appellee should not be allowed any credits for the ex-
pense of renting out the land or collecting the money.

It was the duty of appellee to use the property and take
care of it just as a prudent owner would use his own prop-
erty.   It was waste to fail to keep it in reasonable repair.
The rule of care required in this case is different from that
required of an occupant seeking a rescission where he is
not in fault as to the holding.   Appellee was in the wrong,
and if, while he held the property by means of the machin-
ery of the law, he let it go to waste for lack of the atten-
tion that a prudent owner would give his own property, he
is responsible for the damages thereby resulting to appel-
lants.   It was his duty to see that the tenants took proper
care of the property, and that no waste was done by them
or by the railroad company while it was held by him.

The proof is very conflicting as to the condition of the
land when the bond was given and its condition at the time
that the property was turned over to appellant Turner in
1899.   The proof for appellants shows that it was very
much damaged during this interval.   The proof for appel-
lee is to the effect that there was little or no damage to the
property.   A jury to whom the case was submitted fixed

this damage at $914. We have conculded that this verdict is fully sustained by the evidence, and adopt it as our judgment on this branch of the case, to be allowed as of date January 1, 1889, and to bear interest from that time.

We have no doubt that the witnesses testifying to a much larger damage than this spoke truly; but a large part of these damages was necessarily incidental to renting the land out for so many years, and its mode of cultivation. Appellee did not see the land, in person, from the year 1885 until the year 1889. The proof does not show that he had any agent there who exercised such care for the property as the owner of it would ordinarily exercise. The tenants seem to have been left largely to follow their own inclinations, and it would seem that a part, at least, of the damages done by the railroad would not have occurred if such care had been exercised by appellee as farmers usually exercise under such circumstances. The fencing was in very bad condition when the property was delivered to appellant Turner. The houses had been neglected and allowed to suffer from want of repairs, and the mode of cultivation of the land and the treatment of the fences by the tenants could never have occurred if the party in charge of the property had exercised such care as the owners of such property usually exercise. The evidence justifies a larger allowance, but, as the jury fixed the amount indicated, we have concluded to follow their finding.

The proof shows that the rent was made payable at the time the taxes were due. The court below appears to have fixed correctly the amount paid for taxes by appellee. He properly credited appellee by these amounts, as the taxes on the land had to be paid, and it was immaterial to Turner whether they were paid by him or appellee. From the rent for each year as fixed above, the taxes for that

year should be deducted, and interest counted on the balance from the first of January of the next year.

The proof does not sustain the allowance to appellee of the Martin debt. The circumstances, the written assignment on the stock and the weight of the evidence, all show that the stock was assigned in payment of this judgment, and not as collateral security for it. The court erred in allowing appellee this credit, and it will be omitted in entering judgment on the return of the case.

The refusal of the court below to allow appellee credit for the $111 compound interest paid on the Greene judgment is earnestly complained of, but it seems to us that in this the court ruled properly. Appellants declined to plead usury. The proof did not show want of consideration for the promise contained in the note, and the understanding about not collecting the money according to the terms of the writing seems to have been largely a reliance on Greene's liberality, without any consideration supporting it. He declined to take the note without this stipulation in it, and, when the money was not paid to him in the absence of a plea of usury he might have collected the debt, with interest, according to the terms of the writing. The court properly allowed appellee credit for the attorney's fee paid in the railroad case, for it was necessary for him to employ counsel in that matter; and he properly declined to allow appellant Turner's fees and expenses in defending the appeal in Missouri. These are not covered by the terms of the bond.

But the court erred in his manner of stating the account. He allowed appellants and appellee each interest on their respective claims from the time they accrued to the date of the judgment. This was prejudicial to appellants, especially in view of the fact that a part of appellee's claims

Turner, &c., v. Johnson.

were bearing interest at a greater rate than 6 per cent. The interest on the Samuels debt of $437.75 should be counted at 8 per cent. from July 16, 1885, to December 18, 1888, when appellee purchased it, and the amount then due on this debt should be credited as of that date on the amount owing by appellee for rent. In the same way, the interest on the Bourne judgment should be counted to November 1, 1888, and credited as of that date on the account. The McNamara judgment should be credited with the interest due January 7, 1889, and the John D. Perry judgment, May 19, 1891. The cost in the Superior Court should be credited as of date it was due. And, subject to these credits, interest should be counted in favor of appellants, as in partial payments, down to January 8, 1892; and after deducting from the sum then due the amount then paid, $4,403.59, appellants should have interest on the balance due them from that date until it is paid. The $50 paid Thomas E. Turner for his fee should be credited, as of date January 1, 1887, on the rent then due.

The judgment is therefore reversed, and the cause remanded, with directions to the court below to enter a judgment in conformity to this opinion.

We see no error in the judgment to the prejudice of appellee, and on the cross appeal it is affirmed.

CHIEF JUSTICE HAZELRIGG NOT SITTING..